UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAKEDA PHARMACEUTICAL COMPANY LIMITED, TAKEDA AMERICAS HOLDINGS, INC., TAKEDA PHARMACEUTICALS U.S.A., INC., and TAKEDA DEVELOPMENT CENTER AMERICAS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> CAREMARK RX, LLC, <br><br> Defendant. | Miscellaneous Case No. 2:23-mc-111 <br><br> Underlying Action pending in the United States District Court for the Southern District of New York, *In re Actos Antitrust Litig.* (Coordinated Actions), Case No. 1:13-cv-09244-RA-SDA |

## DECLARATION OF RACHEL J. RODRIGUEZ

I, Rachel J. Rodriguez, hereby swear under penalty of perjury as follows:

1. I am over 18 years of age and legally competent to give this Declaration.

2. I am a Counsel at Elliott Kwok Levine & Jaroslaw LLP in New York, New York and have personal knowledge of all facts affirmed below except where indicated that I am attesting to such facts on information and belief.

3. My firm represents Takeda Pharmaceutical Company Limited, Takeda Americas Holdings, Inc., Takeda Pharmaceuticals U.S.A., Inc., and Takeda Development Center Americas, Inc. (collectively, "Takeda") in *In re Actos Antitrust Litig.* (Coordinated Actions), No. 1:13-cv-09244-RA-SDA (the "Actions"). The Actions consist of two coordinated, related putative class actions both currently before the United States District Court for the Southern District of New York. By an agreement between the parties and endorsed by the relevant court, discovery in the Actions are coordinated.

4. The Actions concern allegations that Takeda prevented competitors from timely marketing a generic version of ACTOS, thereby resulting in the plaintiffs paying monopoly prices between 2011 and at least 2013.

5. In the first of the two coordinated Actions, *In re Actos End-Payor Antitrust Litig.,* No. 13-CV-09244, the plaintiffs ("EPP Plaintiffs") are an as-yet uncertified class of indirect purchasers of ACTOS who allege that Takeda's listing of certain patents in the FDA's *Orange Book* caused them to pay higher prices, in violation of state antitrust laws.

6. In the second of the two Actions, *In re Actos Direct Purchaser Antitrust Litig.,* No. 15-CV-03278, the plaintiffs ("DPP Plaintiffs") are an as-yet uncertified class of direct purchasers of brand and generic ACTOS and a related medication, who allege that they were harmed when Takeda inflated those drugs' price, in violation of federal antitrust laws.

7. Defendant Caremark Rx, LLC ("Caremark"), a non-party to the Actions, is a pharmacy benefit manager ("PBM").  A PBM is a third-party company that manages prescription drug benefits on behalf of health insurers, Medicare Part D drug plans, large employers, and other payers.  Among other things, PBMs negotiate pricing with drug manufacturers, set formularies (lists of approved medications that a health plan will cover), and processing pharmacy claims.

8. As a PBM, Caremark possesses information that would allow Takeda to analyze whether the putative classes are properly defined, determine whether plaintiffs suffered antitrust injury, and assess the relevant antitrust market.  All such information is necessary for Takeda to adequately defend itself in the Actions, including, but not limited to, a challenge to class certification.  For example:

    a. the requested data on payments Caremark made to its customers (e.g., rebates, discounts, pricing guarantees) in connection with ACTOS or

                generic ACTOS would enable Takeda to determine the real-world net payments made by potential third-party payor class members;

      b.      the requested prescription claims data would enable Takeda to determine whether consumers who paid a flat copay for ACTOS or generic ACTOS (who are excluded from the EPP Plaintiffs' putative class) can be reasonably identified, as well as assess the real-world spending levels of putative class members; and

      c.      the requested pharmaceutical & therapeutics committee minutes ("P&T Minutes") would enable Takeda to determine which products Caremark considered to be reasonable substitutes for ACTOS, which determination is relevant to whether plaintiffs' alleged relevant product market is legally cognizable.

9.      A true and correct copy of the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action dated March 29, 2022 (the "Subpoena") at issue is annexed as **Exhibit A**.

10.      A true and correct copy of the Proof of Service of the Subpoena is annexed as **Exhibit B**.

11.      At the time the Subpoena was served, Takeda was being represented by the law firm Conrad O'Brien P.C. ("Conrad O'Brien").

12.      On information and belief, in late May and early June 2022, Conrad O'Brien corresponded with Caremark's attorney Richard S. Davis ("Mr. Davis") of Foley & Lardner LLP regarding compliance with the Subpoena and had a meet-and-confer meeting with Mr. Davis.

13.      On information and belief, on or around June 1, 2022, Mr. Davis advised Conrad O'Brien that he would be willing to share with Caremark a letter from Takeda specifying a limited

amount of documents responsive to the Subpoena along with the specific bases under which Takeda were requesting these documents.

14. In or around August 2022, my firm was retained to represent Takeda in the Actions including representing them for the purposes of obtaining Caremark's compliance with the Subpoena.

15. On August 18, 2022, I sent an email to Mr. Davis introducing my firm as Takeda's new attorneys for the purposes of the Subpoena and indicating that a letter requesting compliance with the Subpoena would be forthcoming.

16. A true and correct copy of that email and all of the other emails referenced herein is annexed as **Exhibit C**.

17. On August 25, 2022, I sent an email attaching a letter to Mr. Davis (the "August 25 Letter") which significantly limited both the document requests originally made in the Subpoena and relevant time-period specified in the Subpoena.

18. A true and correct copy of the August 25 Letter is annexed as **Exhibit D**.

19. On September 28, 2022, my firm held a meet-and-confer with Mr. Davis and his colleague. During this meeting, Takeda's counsel elaborated on the relevance of the requested documents and again indicated their willingness to reduce the burden of responding to the Subpoena, balanced against Takeda's entitlement to obtain information with which to adequately conduct their defense. Mr. Davis indicated that Caremark generally viewed Takeda's requests as information that could be obtained elsewhere, such as from the named EPP or DPP Plaintiffs, and emphasized in particular Caremark's disinclination to produce prescription claims data and P&T Minutes. He stated, however, that he would take all requests back to his client for consideration, and that Caremark may be willing to produce formularies in lieu of P&T Minutes.

20. On October 10, 2022, I sent Mr. Davis another letter on behalf of Takeda (the "October 10 Letter") to Caremark requesting that it produce documents as required in the Subpoena. This letter offered to further narrow the scope of the requests. It also elaborated as to the reasons why the requested information was highly relevant to Takeda's defense of the Actions.

21. A true and correct copy of the October 10 Letter is annexed as **Exhibit E**.

22. On November 4, 2022, I sent another letter via email to Caremark's Attorney (the "November 4 Letter") which corrected a minor error in the October 10 Letter but was otherwise identical to it. Neither Mr. Davis nor anyone representing Caremark responded to the November 4 Letter or the email to which it was attached.

23. A true and correct copy of the November 4 Letter is annexed as **Exhibit F**.

24. On November 18, 2022, I sent a follow-up email asking if there was anything to discuss in a meet-and-confer before the upcoming Thanksgiving holiday weekend. Caremark's attorneys did not respond to this email.

25. The last communication I received from Caremark's counsel was a January 27, 2023, email, responding to a January 20 email from me asking for an update on Caremark's efforts, if any, to comply with the Subpoena. The January 27 email from Mr. Davis stated that one of his partners would be joining him on the next call to discuss matters addressed in my November 4 Letter and that he would follow up with proposed dates and times for such a discussion. To date, neither Mr. Davis nor anyone else on behalf of Caremark has responded to further communications from Takeda's counsel.

26. On February 3, 2023, I sent Mr. Davis a follow-up email to see if he had checked with his colleague about times for a meet-and-confer. Neither Mr. Davis nor anyone representing Caremark responded to this email.

27. On February 15, 2023, I sent Mr. Davis and his colleagues another follow-up email asking whether Caremark's attorneys intended to participate in the meet-and-confer process and pointing out that Takeda had been attempting to schedule a meeting with them since October 2022. I advised that Takeda was prepared to enforce their rights with respect to the Subpoena by motion practice if necessary. Neither Mr. Davis nor anyone representing Caremark responded to this email.

28. On May 3, 2023, I sent Mr. Davis and his colleagues another follow-up email pointing out that they had had ample time to review the October 10 and November 4 Letters, requesting that they advise about their availability for a meet-and-confer, and advising that if Takeda did not hear from them by May 10, 2023, then Takeda would assume Caremark's silence indicated that Takeda should enforce the Subpoena by motion practice. To date, neither Mr. Davis nor anyone representing Caremark has responded to this email.

29. To date, Caremark has failed to produce a single document responsive to the Subpoena and has not committed to doing so.

30. Takeda has subpoenaed several other PBMs in connection with the Actions, including Express Scripts, Inc., OptumRx, Inc., and Humana Pharmacy Solutions, Inc., requesting productions similar to that requested of Caremark in the Subpoena. To date, all of these entities except for Caremark have made significant production of documents responsive to their subpoenas.

31. The discovery deadline in the Actions is August 3, 2023.

I hereby swear under penalty of perjury that the foregoing statements made by me are true.

Dated: New York, NY  
       July 26, 2023

/s/ *Rachel J. Rodriguez*  
Rachel J. Rodriguez

ELLIOTT KWOK LEVINE & JAROSLAW LLP  
565 Fifth Avenue, 7th Floor  
New York, NY 10017  
(212) 321-0510  
rrodriguez@ekljlaw.com