**EKL&J** | **ELLIOTT KWOK LEVINE & JAROSLAW** LLP

565 Fifth Avenue, 7th Floor
New York, NY 10017
tel: +1 (212) 321-0510

www.ekljlaw.com

Rachel J. Rodriguez
rrodriguez@ekljlaw.com
Direct: +1 (646) 777-4515

November 4, 2022

**Via E-Mail**

Richard S. Davis
Foley & Lardner LLP
One Biscayne Tower
2 South Biscayne Boulevard, Suite 1900
Miami, FL 33131
rdavis@foley.com

      Re:    Subpoena to Caremark Rx, L.L.C. in *In re Actos Antitrust Litig.* (Coordinated Actions), No. 1:13-cv-09244-RA-SDA

Dear Mr. Davis:

      I write on behalf of Takeda Pharmaceutical Company Limited, Takeda Americas Holdings, Inc., Takeda Pharmaceuticals U.S.A., Inc., and Takeda Development Center Americas, Inc. (collectively, "Takeda") to follow up on our initial meet and confer of September 28, 2022 regarding the subpoena sent to Caremark Rx, L.L.C. ("Caremark") in the above-captioned action.

      Provided that this proposal resolves all outstanding issues, below are the modifications to its subpoena demand that Takeda is prepared to make. All references to "categories" refer to the categories in our previous letter, dated August 25, 2022.

      **Categories V, VI**

      Upon receipt of written confirmation that Caremark did not have capitation agreements with its customers during the January 1, 2011 to December 31, 2013 period, Takeda will withdraw its requests for (a) contracts between Caremark and pharmacies and (b) data on payment from pharmacies to Caremark for ACTOS and Generic ACTOS.

      **Categories II, III**

      If Caremark is willing to provide a sample of at least 25 contracts between Caremark and its customers that demonstrate a range of minimum rebate guarantees and/or price protection provisions, Takeda will withdraw its request for data on payments to customers for ACTOS and Generic ACTOS. Takeda will also narrow the date range for the contracts to January 1, 2011 to December 31, 2012.

ELLIOTT KWOK LEVINE & JAROSLAW LLP

November 4, 2022
Page 2

The purpose of these contracts is to (a) demonstrate that unique issues predominate over common issues for the putative end-payor class, and (b) assist with damages calculations. For example, plaintiffs often calculate damages based on the assumption that a PBM passes on to its customers the full amount of a rebate the PBM received from the drug manufacturer. That assumption is not always accurate. If Caremark received $X in rebates from Takeda but paid $X+Y in minimum rebate guarantees to Caremark's customers—who are putative end-payor class members—then using the typical damages calculation would result in too high a damages figure for Caremark's customers. That scenario speaks to both the need for individualized treatment and the amount of damages.

The named end-payor Plaintiffs have produced their contracts with PBMs, but as there are only a small number of such Plaintiffs, Takeda needs a larger sample for both damages and to show there are unique issues that predominate.

### Category I

Takeda reiterates its request for prescription-level data. As we understand it, this data is not difficult to identify. It has also been requested by Plaintiffs, and it is highly relevant to issues of predominance and damages. By way of example only, this data could demonstrate that some putative consumer class members met their out-of-pocket maximum for the year before their first ACTOS prescription, and thus would not have paid any less for their Generic ACTOS prescriptions in the "but-for" world. The data could also show that some putative consumer class members did not switch from ACTOS to Generic ACTOS, even after the generic became available. These scenarios would show the need for individualized treatment, as well as speak to the amount of damages (or lack thereof).

### Category IV

If Caremark is willing to produce its formularies for January 1, 2009 to December 31, 2013, Takeda will withdraw its request for P&T Committee minutes.

\* \* \*

We hope that the foregoing will enable us to reach an amicable resolution. In the meantime, Takeda reserves all rights with respect to the subpoena to Caremark.

Sincerely,

*Rachel Rodriguez*

Rachel Rodriguez
of ELLIOTT KWOK LEVINE & JAROSLAW LLP

cc: Ben Bassoff